Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
22nd JUDICIAL CIRCUIT
STATE OF MISSOURI

| | | |
|---|---|---|
| LEON WALKER, JR., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 1522-CC09972 |
| v. | ) | |
| | ) | Division 1 |
| DETECTIVE RONALD E. VAUGHAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**Introduction – Not Part of First Amended Petition**

Plaintiffs live quietly at 5606 Geraldine Ave. Officers obtained a search warrant for that address. The warrant named Darron Ford, who lives two lots away. Officers made a dynamic, "no-knock" SWAT entry into Plaintiffs' residence. Although obviously in the wrong house, the officers held the residents for two hours and ransacked the interior. A building inspector tagged along, and cited Plaintiffs for, among other things, a broken window – the very window the SWAT team had just smashed. Plaintiffs bring this civil rights suit for damages, and also for injunctive relief to stop unjustified SWAT raids and warrantless building inspector tag-alongs.

**PLAINTIFFS' FIRST AMENDED PETITION
FOR DAMAGES AND INJUNCTIVE RELIEF
CIVIL RIGHTS – 42 U.S.C. §§1983, 1988**

Come now Plaintiffs Leon Walker, Jr., Wanda Jean Millbrook, Correll Taylor Millbrook and Victor Wayne Millbrooks, Jr., by counsel W. Bevis Schock and Hugh A. Eastwood, and state for their First Amended Petition brought pursuant to 42 U.S.C. §1983 for damages under the Fourth Amendment, for *Monell* Liability due to Unconstitutional City Policies, for injunctive relief, and for 42 U.S.C. §1988 Attorney's Fees:

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

## PARTIES

1.      Plaintiff Leon Walker, Jr. is a resident taxpayer of the City of St. Louis, Missouri at 5406
Geraldine Avenue, 63115 (the premises).  Mr. Walker has owned and resided at the
premises since 1979.

2.      Plaintiff Wanda Jean Millbrook is Mr. Walker's domestic partner of 25 years and resides
with him at the same address.

3.      Plaintiff Correll Taylor Millbrook is Ms. Millbrook's elder adult son and he resides at the
same address as his mother and step-father.

4.      Plaintiff Victor Wayne Millbrooks, Jr. is Ms. Millbrook's younger adult son and he also
resides at the same address as his mother and step-father. [1]

5.      Defendant Detective Ronald E. Vaughan is a police officer with the City of St. Louis
Metropolitan Police Department.  Plaintiffs sue Detective Vaughan in his individual
capacity only.

6.      The St. Louis Metropolitan Police Department has no independent existence but is a part
of the body corporate of the City of St. Louis.

7.      Defendant Building Inspector Hershell Wallace is a building inspector with the City of
St. Louis, Missouri.  Plaintiffs sue Inspector Wallace in his individual capacity only.

8.      Defendant City of St. Louis, Missouri is an independent municipality within, and political
subdivision of, the State of Missouri.  Plaintiffs sue Defendant City for declaratory and
injunctive relief.

---

[1] Victor Wayne Millbrooks, Jr. spells his name with an "s" at the end.  Wanda Jean Millbrook,
Victor Wayne Millbrooks, and Correll Taylor Millbrook will be collectively referred to herein as
the "Milbrook Plaintiffs".

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

## SUBJECT MATTER JURISDICTION

9.    Plaintiffs bring this action pursuant to 42 U.S.C. §1983 and §1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

10.   State courts have concurrent jurisdiction with the federal courts over 42 U.S.C. 1983 actions.[2]

## VENUE

11.   All relevant events occurred in the City of St. Louis, Missouri.

## COLOR OF STATE LAW

12.   At all relevant times Detective Vaughan and Inspector Wallace, and all described city officials, police officers and their supervisors, and all city employees acting with them, were acting under color of state law.  Particularly, at all relevant times all those persons were acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Missouri, and its political subdivisions.

13.   At all relevant times, the City's enactment of and its following of its policies regarding dynamic entry into private residences and accompanying building code inspections was under color of state law.

## JURY DEMAND

14.   Plaintiffs demand a jury trial on their claims for damages.

## FACTS

15.   The premises are a two-story, single-family house.

16.   Plaintiffs live at the premises as a family unit.

---

[2] *Felder v. Casey*, 487 U.S. 131, 139 (1988).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

17.   In the early hours of Wednesday, March 5, 2014 Plaintiff Walker left the premises for

work, as is his routine and custom.  The Millbrook Plaintiffs remained on the premises

preparing for their day.

18.   After Plaintiff Walker left for work, around 8:00 a.m., Detective Vaughan led the

execution of a search warrant at the premises, (the "raid").

19.   The warrant was issued the day before, that is, March 4, 2015, at 1:40 p.m. by Judge

Theresa Counts-Burke of this 22nd Judicial Circuit Court.

20.   Judge Counts-Burke issued the warrant after Detective Vaughn swore an affidavit

attesting to Detective Vaughan's personal knowledge of the person and facts described in

his affidavit.

21.   The warrant sought contraband including:

> Heroin, a Schedule I Narcotic, Illegal Firearms, U.S. Currency, Drug Transaction
> Records, Narcotic Paraphernalia, **Records Linking the Target to the
> Residence/Crime**, and Any Other Instruments of the Crime.
>
> (emphasis added)

22.   The warrant alleged the contraband had been used as means for committing the felonies

of:

> Violation Missouri Controlled Substance Law (Sale and Possession) / Unlawful
> Possession of a Firearm

23.   The warrant specifically described the "place" to be searched as:

> Darron Ford BM DOB 09/30/1979 and 5406 Geraldine Avenue, which is a two
> story, single family residence.  The residence is located in the 5400 block of
> Geraldine Avenue in the Mark Twain neighborhood.  5400 Geraldine is bordered
> by Harney Avenue to the south and West Florissant Avenue to the north.

24.   Darron Ford is not a "place" but it appears from the context that the warrant is directed at

him.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

25.   In reality, Darron Ford resides at 5412 Geraldine Avenue, two lots north of Plaintiffs' two story residence at 5406 Geraldine Avenue.

26.   Mr. Ford's residence at 5412 Geraldine Avenue has green siding.

27.   Plaintiffs' house at 5406 Geraldine Avenue has brown brick cladding.

28.   There is a vacant lot between Mr. Ford's residence and Plaintiffs' residence.

29.   Mr. Ford's house and Plaintiffs' house are dissimilar in appearance and it is objectively unreasonable for a person with knowledge of the appearance of both houses to mistake one for the other.

30.   Mr. Ford and the premises at 5412 Geraldine Avenue had long been the subject of neighbor complaints to the SLMPD.

31.   Darron Ford had long been a person of interest to the SLMPD for suspected drug-related activity.

32.   On information and belief, and based on a Case.net search, Darron Ford had no prior convictions for criminal conduct.

33.   Detective Vaughan had been involved in earlier surveillance of Mr. Ford and so Detective Vaughan knew that Mr. Ford lived at 5412 Geraldine Avenue not Plaintiff's premises at 5406 Geraldine Ave.

34.   Detective Vaughan stated in his "Affidavit in Support of a Search Warrant", that leading up to his application for the warrant:

a.    The SLMPD had executed a search warrant at 5412 Geraldine and seized "crack cocaine, packaging materials and a firearm from Darren Ford".

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

    b.     A confidential informant had stated that illegal drug activity was occurring at Plaintiff's residence at 5406 Geraldine and that Darron Ford lived at 5406 Geraldine.[3]

35.    The confidential informant's statement contradicted the results of the search warrant and so those statements were confused.

36.    The City of St. Louis property records, publicly available on the internet show that the owners of the two properties are:

    a.    5406 Geraldine:    Leon Walker, Jr.

    b.    5412 Geraldine    Yevette Ford

37.    Yvette Ford had owned 5412 Geraldine for many years before the raid.

38.    A reasonable person in the position of Detective Vaughan would have checked those records and concluded that since Yevette Ford and Darron Ford have the same last name it was unreasonable to infer that Darron Ford actually lived at 5406 Geraldine, where Plaintiffs live.

39.    A reasonable officer in the position of Detective Vaughan would have known that the confusion in the confidential informant's story, as well as the public records about the residence of Yvette Ford, dictated that no raid should take place until the confusion was cleared up.

40.    Detective Vaughan's "Affidavit in Support of a Search Warrant" stated that he and Detective Michael Kegel, DSN 7216, had:

---

[3] Plaintiffs anticipate seeking in camera review of the confidential informant's lack of reasonable reliability in the interest of fundamental fairness. *Ladd v. Martin,* 339 F. App'x 660, 660-61 (8th Cir. 2009).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

    a.      Surveilled 5406 Geraldine during two separate two hour time periods on "March 3rd, 2014, and March 4th, 2014 in the morning/afternoon", and

    b.      Had seen drug activity and suspicious persons coming and going from 5406 Geraldine during that surveillance,

    c.      Had communicated with a confidential informant who described two individuals named, "Mark" and "Roscoe" as living at 5406 Geraldine, and who stated that "Mark" was in fact the same Darron Ford who resided at 5412 Geraldine and had been subject to the prior successful search for contraband.

41.    In the last 25 years no persons fitting the profile for narcotics-correlated or illegal gun correlated activity have come and gone from 5406 Geraldine.

42.    In the alternative Detective Vaughan and/or Detective Kegel:

    a.      Saw suspicious persons coming and going from 5412 Geraldine and became confused about the correct address,

    b.      Conducted merely cursory surveillance on March 3rd and/or 4th and made inaccurate and/or exaggerated statements regarding the comings and goings of suspicious persons to and from 5406 Geraldine for the purposes of obtaining a warrant for that address instead of 5412 Geraldine, or

    c.      Conducted no surveillance at all on March 3-4, 2015 and simply relied on an erroneous statement from the confidential informant as to the location where illegal conduct was occurring.

43.    Detective Vaughan had no personal knowledge that Darron Ford, a/k/a "Mark", had any link to 5406 Geraldine.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

44.    Detective Vaughan had no personal knowledge that Darron Ford, a/k/a "Mark", had any
       link to any of plaintiffs.

45.    Detective Vaughan had no personal knowledge that "Roscoe", any recently-paroled
       convicted felons, or any other gang members had any link to any of the Plaintiffs or to
       5406 Geraldine.

46.    The statement by the confidential informant that (s)he had been inside 5406 Geraldine
       within the 24-48 hour time period before Detective Vaughan swore out the affidavit was
       false and/or unreliable in that no other facts reasonably connected the activity of Darron
       Ford, a/k/a "Mark", and/or "Roscoe" to 5406 Geraldine.

47.    Detective Vaughan's statement that during any surveillance he did conduct on the prior
       two days he had seen suspicious persons coming and going from 5406 Geraldine was
       false.

48.    Detective Vaughan's statements in his affidavit about illegal conduct and/or suspicious
       activity at 5406 Geraldine were not based on his personal knowledge but rather on the
       hearsay statements of Detective Kegel, the confidential informant, and/or others.

49.    Darron Ford had not been at the Plaintiffs' premises or had contact with any of the
       Plaintiffs for approximately five years before the raid.

50.    In his subsequently written police report narrative Detective Vaughan stated that he had
       been involved in the surveillance of the neighborhood.

51.    None of Plaintiffs:

       a.    Has a criminal record,

       b.    Has ever been arrested,

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

    c.    Was individually suspected of drug- or gang-related activity at the time Detective Vaughan obtained the warrant.

52.    Detective Vaughan had reasonable knowledge that "Roscoe" and other gang members had a connection to 5412 Geraldine and/or to Mr. Ford, a/k/a "Mark".

53.    On March 5, 2014 Detective Vaughan lacked a reasonable belief that Plaintiffs had any connection to Mr. Ford other than residing two lots away.

54.    On March 5, 2014 Detective Vaughan had no reasonable belief that there was contraband within Plaintiff's premises as literally described in the warrant, and particularly no reasonable belief that at 5406 Geraldine there would be found:

    a.    Heroin,

    b.    Crack Cocaine,

    c.    Multiple firearms in the possession of a convicted felon.

55.    On March 5, 2014 it was objectively unreasonable for Detective Vaughan to search Plaintiffs' premises if his purpose was to search for what was stated on the warrant, that is, Mr. Ford and/or the contraband alleged to be under Mr. Ford's dominion or control.[4]

56.    On March 5, 2014 before entering Plaintiffs' premises, Detective Vaughan lacked a reasonable belief that he would find Mr. Ford and/or the contraband alleged to be under Mr. Ford's dominion or control.

57.    On March 5, 2014 before entering Plaintiffs' premises, Detective Vaughan particularly lacked a reasonable belief that he would find "records linking the Target [Darron Ford] to the Residence/Crime" at Plaintiffs' premises.

---

[4] *Jones v. Wilhelm,* 425 F.3d 455 (7th Cir. 2005) (officer knew that warrant was imprecise in describing which apartment in multi-family building should be searched).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

58.   On March 5, 2014 before entering Plaintiffs' premises Detective Vaughan lacked a reasonable belief that any of the Plaintiffs at 5406 Geraldine were:

   a.   Engaged in a felony, or

   b.   Involved in the felony sale or felony possession of unlawful drugs, or

   C.   Unlawful possession of firearms.

59.   In the alternative, on information and belief, and based on logical inference, the City of St. Louis Metropolitan Police Department has an inadequate or non-existent audit system to confirm that the address on a warrant was the address which had been surveilled and which was the actual target of the police action.

60.   In the alternative, Detective Vaughan's reliance on the incorrect address on the warrant was not reasonable.

61.   In the alternative, if a numerical error was made by the confidential informant and/or Detective Kegel, Detective Vaughan knew of or had constructive knowledge of the error.

62.   On the morning of March 5, 2014, Detective Vaughan, working in concert with other police officers according to a common plan and design, entered Plaintiffs' premises:

   a.   With overwhelming force, using a battering ram-type device to open the front door and conduct a raid on the premises, and

   b.   Executed a tactical armed raid pursuant to a written tactical ("TAC") Plan, including a "dynamic entry" into Plaintiffs' premises.

63.   During their dynamic entry the SWAT team members broke Plaintiffs' front windows.

64.   The "dynamic entry" by the SWAT team involved (1) terrifying surprise, (2) noise-flash diversionary devices of extreme force, and (3) overwhelming numbers of SWAT officers to "neutralize" persons viewed as threats.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

65.    In making their "dynamic entry" into the premises, Detective Vaughan and the SWAT team and other officers did a "no knock" entry into the premises.

66.    Detective Vaughan was an integral participant to the "no knock" entry and search of the premises, and was not a mere bystander to the entry and search.[5]

67.    As Detective Vaughan and the SWAT team members entered the premises they had their guns drawn.

68.    As the entry began, the Milbrook Plaintiffs thought they were under attack by criminals and began to scatter within the house.

69.    Detective Vaughan and members of the SWAT team threw percussion bombs to startle the Milbrook Plaintiffs and to get the Milbrook Plaintiffs to stop running.

70.    Given the sanctity and privacy of the home, knocking before entering a home to serve a warrant is fundamental to Fourth Amendment jurisprudence, which incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry.[6]

---

[5] *Boyd v. Benton Cnty.,* 374 F.3d 773, 780 (9th Cir.2004); *Chuman v. Wright,* 76 F.3d 292, 294 (9th Cir.1996).  The "integral participant" doctrine does not implicate government agents who are "mere bystanders" to an unconstitutional search. *Compare Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n. 12 (9th Cir.2007) (identifying as an integral participant an officer who helped in handcuffing the plaintiff); *Boyd,* 374 F.3d at 780 (same for officers who were "aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed"); *James ex rel. James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (same for officers who provided armed backup during unconstitutional search); *Melear v. Spears,* 862 F.2d 1177, 1186 (5th Cir.1989) (same for officer who did not enter apartment but stood armed at the door during the search); *with Torres v. City of Los Angeles,* 548 F.3d 1197, 1206 (9th Cir.2008) (finding that an officer who neither instructed others to make the arrest nor was present during the arrest was not an integral participant); *Blankenhorn,* 485 F.3d at 481 n. 12 (same for an officer who arrived at the scene after completion of allegedly unlawful arrest and an officer who provided at most crowd control); *Motley v. Parks,* 432 F.3d 1072, 1082 (9th Cir.2005) (en banc).
[6] *Wilson v. Arkansas,* 514 U.S. 927, 934  (1995).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

71.     The U.S. Supreme Court has recognized that reasonable countervailing law enforcement

interests may permit unannounced entry, while leaving it to the lower courts the task of

determining the circumstances under which an unannounced entry is reasonable under the

Fourth Amendment.[7]

72.     Here, Plaintiffs suffered a "no knock" entry during daylight morning hours when most

families are enjoying their breakfast and/or dressing for their day.

73.     The mere expectation that drugs or weapons may be inside a premises does not justify a

"no knock" entry.[8]

74.     On information and belief, and based on inference, when Detective Michael Kegel

executed a search warrant at Mr. Ford's house at 5412 Geraldine before the raid at issue

here he had not seen the need for a dynamic, tactical entry and had not used such an

entry.

75.     Certain categories of crimes that may frequently pose heightened risks to officer safety or

preservation of evidence, even where there is probable cause, do not create general

exceptions or blanket exceptions to the "no knock" rule.[9]

76.     The mere presence of drugs does not justify a "no knock" or unduly short (e.g., 3

seconds) wait between the knock and entry.[10]

---

[7] *Wilson,* 514 U.S. at 936.
[8] *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1085-86 (9th Cir. 2011); *United States v. Colonna,* 360 F.3d 1169, 1176 (10th Cir.2004) ("[T]he mere likelihood that drugs or weapons will be found at a particular premises does not justify a no-knock or nighttime execution of a search warrant."); *Richards v. Wisconsin,* 520 U.S. 385, 394 (1997) (a no-knock entry is justified only by "exigent circumstances," which include when officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.").
[9] *Richards v. Wisconsin,* 520 U.S. at 393-94.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

77.     To constitutionally engage in a no knock SWAT tactical entry an officer must have particularized knowledge of specific and articulable facts that the area to be searched harbors (a) an individual who is, or evidence that is, dangerous to those on the arrest scene[11], and/or (b) an individual has already demonstrated an intent or specific propensity to kill or seriously harm those on the arrest scene,[12] and/or (c) a knock would be inhibiting to the investigation because an individual on the arrest scene has demonstrated an intent to destroy evidence of drugs.

78.     The wait between a knock and entry,[13] must be reasonable.[14]

---

[10] *U.S. v. Jenkins,* 175 F.3d 1208, 1213-14 (10th Cir. 1999) ("[W]e note that a few extra seconds is unlikely to prevent a suspect from flushing large quantities of evidence down the toilet or destroying it in a kitchen disposal."); *U.S. v. Moore,* 91 F.3d 96, 98 (10th Cir. 1996) (affirming trial court's conclusion that entering three seconds after making announcement was "virtually instantaneous" and therefore "precluded any claim that the officers were precluded admittance").

[11] *Cf. Maryland v. Buie,* 494 U.S. 325, 337 (1990) (allowing a protective sweep of a house during an arrest where the officers have "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene"); *United States v. Tucker,* 313 F.3d 1259, 1265-66 (10th Cir. 2002) (nighttime execution reasonable given risk of destruction of evidence, personal injuries to nearby residents, and property damage due to volatile nature of chemicals used to manufacture methamphetamine).

[12] *Cf. U.S. v. Colonna,* 360 F.3d 1169, 1176 (10th Cir. 2004) (no knock or nightmare entry supported by specific factors in affidavit: suspect's prior extensive violent involvement with law enforcement, the expressed fear of a concerned citizen that suspect would retaliate violently, and the presence of children in the vicinity) *with Alexander v. City and County of San Francisco,* 29 F.3d 1355 (9th Cir. 1994) (forcible daytime entry after an hour held unreasonable even though elderly, obese, mentally-ill and half-blind suspect had nailed door shut and called from inside "I'm going to get my gun and use it," since warrant was not for seizure of suspect's person).

[13] *U.S. v. Goodson,* 165 F.3d 610, 614 (8th Cir.1999) ("'The determination of whether an officer was justified in forcing entry after announcing his presence and purpose does not turn on any hard and fast time limit, but depends upon the circumstances confronting the officer serving the warrant."); *U.S. v. Spikes,* 158 F.3d 913, 926 (6th Cir.1998) (declining to create bright-line rule regarding amount of time officers must wait after knocking and announcing); *U.S. v. Jones,* 133 F.3d 358, 361 (5th Cir.); *cf. U.S. v. Knapp,* 1 F.3d 1026, 1031 (10th Cir. 1993) (stating that, under section 3109, "there is no concrete rule requiring the officers to wait a specific period of time before entry").

[14] *U.S. v. Myers,* 106 F.3d 936, 940 (10th Cir. 997) (upholding district court's conclusion that agents who knocked loudly and waited ten seconds before entering complied with the Fourth Amendment); *U.S. v. Knapp,* 1 F.3d at 1031 (affirming district court's determination that officers

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

79.   A mere statement that an officer fears for his safety is insufficient.[15]

80.   Imagined persons and imagined emergencies constitute no reason to use lethal force, which itself constitutes a danger to the community.[16]

81.   There were no specific and articulable objective factors to warrant finding Mr. Ford at Plaintiffs' premises at the time of the "no knock" raid.

82.   In the alternative, there were no specific and articulable objective factors which would create a reasonable belief in Defendants' minds that even at the correct house that:

    a.   This raid involved "heightened" dangers to officer safety,

    b.   Knocking would be futile, or

    c.   That a knock and announce would cause the destruction of the drugs and weapons sought.

83.   In the alternative, there were no specific and articulable objective factors which differentiated the previous raid on Darron Ford at 5412 Geraldine by Detective Kegel, which on information and belief did not involve a dynamic SWAT "no knock" entry, and the raid of March 5th at 5406 Geraldine.

84.   On information and belief, and based on logical inference, when Detective Vaughan arrived outside Plaintiffs' residence on the morning of the incident he knew or had constructive knowledge that he and the SLMPD had no reasonable belief that they were about to enter the correct premises where they would find guns and drugs.

---

did not violate section 3109 because they waited ten to twelve seconds after knocking and announcing).

[15] *Deorle v. Rutherford,* 272 F.3d 1272, 1281 (9th Cir. 2011).

[16] *Blanford v. Sacramento County,* 406 F. 3d 1110, 1120 (9th Cir. 2005) (Noonan, J., dissenting).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

85.  It was not a reasonable mistake for Detective Vaughan to enter 5406 Geraldine Avenue instead of 5412 Geraldine Avenue because the former is a wholly different house from the latter, and is two lots away.

86.  Detective Vaughan knew, or objectively should have known, that smoke bombs and other instruments of extreme force and terrifying surprise were being used on the wrong premises to find Mr. Ford.

87.  On information and belief, and based on logical inference, Detective Vaughan knew at the time of the raid that at whatever residence the raid occurred those premises would likely suffer blown out windows, damage to door frames, damage to the roof, and damage to interior ceilings and floors, and that the inhabitants of the house would suffer the damages outlined below.

88.  After their entry into Plaintiffs' residence, Detective Vaughan and/or other SLMPD officers forced the Millbrook Plaintiffs to the ground using physical force and verbal orders to the effect of "get on the floor."

89.  Detective Vaughan and/or other SLMPD officers handcuffed each of the Millbrook Plaintiffs.

90.  In seizing her person Detective Vaughan and/or other SLMPD officers further injured Plaintiff Wanda Millbrook's previously injured back.

91.  During the raid at 5406 Geraldine Detective Vaughan and the St. Louis Metropolitan Police Department found neither

   a.   Mr. Ford,

   b.   The contraband described on the warrant, nor

   c.   Any other expected materials such as:

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

Heroin, a Schedule I Narcotic, Illegal Firearms, U.S. Currency, Drug

Transaction Records, Narcotic Paraphernalia, Records Linking the Target

to the Residence/Crime, and Any Other Instruments of the Crime.

92.     In the alternative after the first few moments of the raid the error in going to 5406

Geraldine Avenue instead of 5412 Geraldine Avenue was obvious and so Detective

Vaughan thereafter lacked a reasonable belief that they would find Mr. Ford or his

contraband at the premises.[17]

93.     Early in the raid some or all of the Millbrook Plaintiffs said words to the effect of:

a.      "You have the wrong house", and

b.      "Darron Ford lives two lots down the street."[18]

94.     Despite knowing that he was in the wrong house, Detective Vaughan continued to search

the premises for Mr. Ford and the contraband described on the warrant.

95.     Detective Vaughan continued to hold the Millbrook Plaintiffs under arrest, in that they

were seized, handcuffed, and not free to leave.

96.     The seizure of the Millbrook Plaintiffs continued for approximately two hours.

97.     During the time Detective Vaughan and members of the SWAT team were holding the

Millbrook Plaintiffs, particularly including the time period after the officers knew they

had the wrong house the officers brought in a canine unit to search the house.

98.     There was no reasonable law enforcement reason to bring in a canine, because by then

the officers knew they had the wrong house.

---

[17] *Pray v. City of Sandusky,* 49 F.3d 1154 (6th Cir. 1995) (initial entry into wrong apartment held objectively reasonable, but jury issue whether officers remained in apartment after discovering their error).
[18] *See, e.g., Peterson v. Jensen,* 371 F.3d 1199 (10th Cir. 2004) (searching apartment after officers verified that target no longer resided there violated clearly established rights of new residents).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

99.    Detective Vaughan and members of the SWAT team ransacked and damaged the premises by, for example:

    a.    Emptying drawers, cupboards, and closets of their contents and throwing the contents on to the floor,

    b.    Overturning beds and cutting open mattresses,

    c.    Turning on and searching the data on a personal computer, and physically damaging that computer,

    d.    Seizing and searching the data on a cell phone,

    e.    Seizing and searching currency, and

    f.    Urinating onto the floor of a ground-floor bathroom and not into the toilet.

100.    Detective Vaughn damaged a laptop computer owned by Victor Milbrooks so that it would no longer close all the way.

101.    The value of the computer was approximately $300.00.

102.    Detective Vaughan had no warrant to search the data on any computer[19] or any cell phone.[20]

103.    Detective Vaughan falsely accused Plaintiff Victor Millbrooks of being a drug dealer, and of using his cell phone and currency for drug related purposes.

104.    Detective Vaughan and the other officers eventually left the premises at 5406 Geraldine.

105.    Other than building code violations as stated below, none of Plaintiffs were charged with a crime or cited for any violation of law.

---

[19] A search of a computer's data requires a separate warrant based on probable cause, and that law was well established at the time of the search. *See, e.g., State v. Sachs,* 372 S.W.3d 56 (Mo. App. 2012); *State v. Tremaine,* 315 S.W.3d 769 (Mo. App. 2010).

[20] Plaintiffs concede that on the date of the search the U.S. Supreme Court had not yet decided *Riley v. California,* 573 U.S. ___ (June 25, 2014), which holds that a warrant is required to search the data on a cell phone.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

106.    After the initial entry and detention of the Milbrook Plaintiffs and as the raid continued, Detective Vaughan invited City of St. Louis Building Inspector Herschall Wallace into the premises.

107.    The process of inviting a building inspector into the premises in connection with a law enforcement raid is commonly known in the City of St. Louis as a "referral" or a "tag along".

108.    Detective Vaughan's referral to Inspector Wallace was pursuant to a City policy to refer so-called "drug houses" for warrantless interior building code inspection in connection with police raids.

109.    On information and belief, and based on inference, Detective Vaughan has no training or education in the building code nor training in building inspection, and had no knowledge of whether there were building code violations in the Plaintiffs' residence.

110.    Inspector Wallace had no warrant of his own to search the interior of Plaintiffs' residence.

111.    Inspector Wallace conducted his own search of the interior of Plaintiffs' residence:

    a.      Without a warrant,

    b.      Subsequent to the SWAT team search, and

    c.      Not incidental to that search.

112.    Inspector Wallace conducted his search for the purpose of finding building code violations.

113.    The warrant on which Detective Vaughan relied upon for his search and inspection included no reference to building code violations.

114.    Plaintiffs' front windows were not damaged before the raid.

18

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

115. Inspector Wallace issued a citation to Plaintiff Walker for:

    a.    Minor code violations in two interior bathrooms and on a certain interior wall made of drywall, and

    b.    Broken front windows.

116. The damage to the front windows as cited was precisely the damage which had just been caused by Detective Vaughan and SLMPD officers.

117. Those violations were promptly corrected by Plaintiff Walker.

118. As a direct result of the above stated conduct of Detective Vaughan and Inspector Wallace, Plaintiff Walker incurred attorney's fees and court costs related to defending against the citations issued as to the condition of the premises.

## RISKS OF SWAT ENTRY

119. Dynamic entry by a SWAT team involves extreme terror and extreme violence by the police.

120. Dynamic entry works well to defuse a situation already known to be actually violent, but otherwise, dynamic entry creates needless confrontation and risk.

121. The needless risks of SWAT team dynamic entry include risk of damage to:

    a.    The person(s) within the home, and

    b.    The police officers themselves because residents think they are being attacked by criminals, and will lawfully respond with force,

    c.    Completely innocent persons, perhaps including children, in the invaded house in the event of an invasion of the wrong house, and

    d.    Bystanders perhaps including children.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

122.   Unless the use of a TAC entry is otherwise legally justified, it is not reasonable for police officers to attempt to reduce risks to themselves during execution of a warrant by such tactics as a SWAT team dynamic entry because such tactics create other risks.

## MISTAKES UNREASONABLE

123.   Reasonableness is the analytical framework for whether a warrant issues in mistake, and whether an officer has probability to realize the wrong house or persons are being searched.  A house to be searched must be described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and to determine whether there is any reasonable probability that another premises might be mistakenly searched.[21]

124.   If a warrant has the wrong address, then the validity of the warrant hinges on whether an officer had a "reasonable probability" to be aware that the wrong place was searched.[22]

125.   The Fourth Amendment's allowance for officers' honest mistakes is limited to mistakes that are objectively reasonable.[23]

126.   The execution of a valid warrant on the wrong premises violates the Fourth Amendment if the officers should know the premises searched are not the premises described in the warrant, *i.e.,* the officers' mistake is not objectively reasonable.[24]

---

[21] *Lyons v. Robinson,* 783 F.2d 737, 738-39 (8th Cir. 1986); *see also United States v. White,* 356 F.3d 865 (Fed. 8th Cir., 2004)
[22] *United States v. King,* 2013 U.S. Dist. LEXIS 98047 (E.D. Ky. July 15, 2013), relying on *United States v. Pelayo-Landero,* 285 F.3d 491, 496 (6th Cir. 2002) applying *United States v. Leon,* 468 U.S. 897 (1984).
[23] *Dawkins v. Graham,* 50 F.3d 532, 534 (8th Cir. 1995) citing *Maryland v. Garrison,* 480 U.S. 79, 87 & n. 11 (1987).
[24] *Dawkins,* 50 F.3d at 534; *Smith v. City of Jacksonville,* 2007 U.S. Dist. LEXIS 35640 (E.D. Ark. May 15, 2007) (Police SWAT drug raid on wrong house first and handcuffing occupants stated a claim for relief and overcame summary judgment claim because reasonableness was partially a question of fact).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

127.   Here, in the totality of the circumstances, it was an unreasonable mistake for Detective

Vaughan to swear an affidavit that Mr. Ford and his alleged contraband resided at

Plaintiffs' premises, particularly because the house number is a critical part of any

warrant application, which requires particular care by the applicant for the warrant.

128.   Detective Vaughan either:

(a)     Knew that his Affidavit contained false statements as to his personal knowledge,

or in the alternative, or

(b)     Lacked sufficient and reasonable personal knowledge of the truth of his

statements.

129.   Here, in the totality of the circumstances, once Detective Vaughan and the SWAT team

arrived at the Plaintiffs' residence, it was an unreasonable mistake for him and them to

enter pursuant to a written TAC plan because when they arrived at 5606 Geraldine and

looked at the house they knew or objectively should have known that they had the wrong

house to find Mr. Ford, a/k/a "Mark" and/or "Roscoe", and/or contraband such as drugs

and firearms.

130.   Here, in the totality of the circumstances, it was unreasonable for Detective Vaughan and

the SWAT team to enter the house without knocking first.

131.   Once they had entered, it was an unreasonable mistake for Detective Vaughan and the

SWAT team to begin to search Plaintiffs' house because they knew or should have

known that Plaintiffs' house was not Mr. Ford's house nor was it "Mark" or "Roscoe"'s

house.[25]

---

[25] *Malley v. Briggs*, 475 U.S. 335 (1986) (a reasonably well trained officer lack qualified immunity if he knows that his affidavit failed to establish probable cause as to the place to be searched, or his mistaken belief is unreasonable).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

132. Here, in the totality of the circumstances, it was an unreasonable mistake for Detective Vaughan to seize, or to direct the seizure of, the Millbrook Plaintiffs' persons because Detective Vaughan knew or should have known that he had the wrong house to find Mr. Ford a/k/a "Mark".

133. Here, in the totality of the circumstances, it was an unreasonable mistake for Detective Vaughan to keep the Millbrook Plaintiffs' persons seized for approximately two hours after their initial seizure because after a few moments Detective Vaughan knew or should have known that he was at the wrong house and the Millbrook Plaintiffs were not Mr. Ford a/k/a "Mark" or "Roscoe".

134. The "no knock" nature of the entry itself directly and proximately led to the use of excessive force and an unduly prolonged seizure of the Millbrook Plaintiffs inside the house.[26]

135. On information and belief and based on reasonable inference, Detective Vaughan continued the raid after he was aware he was in the wrong house in order to cover up his error.

**BUILDING CODE INSPECTION**

136. The Fourth Amendment requires that police actions in execution of a warrant be related to the objectives of the authorized intrusion.[27]

137. Here the objective was to search Mr. Ford and to search for and seize alleged contraband, as listed with particularity on the warrant.[28]

---

[26] *Bravo v. City of Santa Maria,* 665 F.3d 1076 (9th Cir. 2011); *cf. Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989).
[27] *See, e.g., Arizona v. Hicks,* 480 U.S. 321, 325 (1987).
[28] *Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1360 (9th Cir. 1994).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

138.   The presence of Inspector Wallace in the premises, who did not engage in the execution of the warrant or assist the police in their task, was not related to the objective of the authorized intrusion.[29]

139.   Although the presence of third parties during the execution of a warrant may in some circumstances be constitutionally permissible insofar as it is necessary for civilian or expert assistance to help obtain the particularized thing to be searched and seized[30], that was not the case here and the mere presence of Inspector Wallace was itself unconstitutional.

140.   Inspector Wallace's warrantless search for building code violations was unconstitutional.

141.   Inspector Wallace was an integral participant in his own search for building code violations.[31]

142.   On information and belief, and based on logical inference, Detective Vaughan made the referral to Inspector Wallace well before the raid.

## CITY OF ST. LOUIS POLICY
## TO CONDUCT BUILDING INSPECTIONS IN CONNECTION WITH DRUG RAIDS

143.   On information and belief the City of St. Louis through its St. Louis Metropolitan Police Department and its Building Division has a policy of referring so-called "drug houses" for warrantless building department inspection in connection with police raids to seize narcotics or weapons.

---

[29] *Wilson v. Layne,* 526 U.S. 603 (1999); *Buonocore v. Harris,* 134 F.3d 245 (4th Cir. 1998); *Bills v. Aseltine,* 52 F.3d 596 (6th Cir. 1995).
[30] *Bills v. Aseltine,* 52 F.3d 596 (6th Cir. 1995); *cf. United States v. Clouston,* 623 F.2d 485 (6th Cir. 1980); *see also* 18 U.S.C. §3105.
[31] *See* fn. 5, above, for discussion of case law.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

144.    A policy is a deliberate choice among alternatives that gives direction to city employees

including Detective Vaughan and Inspector Wallace as to how to discharge their duties

under color of law.[32]

145.    The policy to bring building inspectors on drug raids is unconstitutional in that:

    a.    Any interior building code issues are unknown at the time the police officer

swears his affidavit as to the narcotics or weapons,

    b.    A reasonably trained police officer is not trained in observing or enforcing

building code deficiencies, and

    c.    The building inspector lacks a warrant for his/her inspection of the building

interior.[33]

146.    Here, Detective Vaughan lacked any reasonable belief that the interior of Plaintiffs'

premises contained building code violations at:

    a.    The time he obtained the warrant, and

    b.    Before and during the raid of March 5, 2014.

147.    There could be no warrant based on probable cause, supported by oath or affirmation,

"particularly describing the place to be searched and the persons or things to be seized"[34]

because no officers (nor any confidential informant) nor any building inspectors had any

knowledge of the interior of Plaintiff's house.

---

[32] *Monell v. Department of Soc. Svcs.,* 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).

[33] The entry of the Inspector Wallace into Plaintiffs' premises to search for building code violations in connection with a warrant to enter to search for drug and firearm violations is reminiscent of what were known and hated in Revolutionary times as a "general warrant", which would give officers the right to enter a house and just look for whatever they could find that was wrong.

[34] Fourth Amendment, final phrase.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

148. Here, in the totality of the circumstances, it was unreasonable for Detective Vaughan to refer Plaintiffs' premises for inspection by Inspector Wallace because:

    a.    Detective Vaughan knew that the police were causing the damage to the building and related building code violations,

    b.    Detective Vaughan was otherwise untrained in enforcing the building code and as such could not determine whether probable cause existed as to a technical violation, and

    c.    Detective Vaughan knew that the warrant he obtained did not encompass building code violations.

149. Here, in the totality of the circumstances, it was unreasonable and unconstitutional for Inspector Wallace to enter Plaintiffs' premises without a warrant to perform a code inspection.

### DAMAGES

### Actual Damages – All Defendants

150. As a direct result of the actions of Detective Vaughan, each of the Plaintiffs suffered:

    a.    Terror, stress, fear, and anxiety,

    b.    Garden variety emotional distress,

    c.    Humiliation and embarrassment,

    d.    Intrusion into the sanctity and privacy of the home, and therefore a loss of being secure in the house,

    e.    Disgrace and loss of personal reputation in the community and particularly with their neighbors,

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

    f.      Loss of trust in law enforcement generally and the St. Louis Metropolitan Police Department particularly,

    g.      Property damage to the premises,

    h.      Loss of liberty,

    i.      Pain and suffering, and

    j.      Attorney's fees and court costs related to defending against the Building Inspector citation, in an exact amount to be determined before trial.

151.    As a direct result of the actions of Inspector Wallace, each of the Plaintiffs suffered:

    a.      The same damages as listed above, and

    b.      Loss of privacy from a warrantless search by the building inspector.[35]

152.    As a direct result of the actions of Inspector Wallace, Plaintiff Leon Walker also suffered the payment of attorney's fees and court costs related to defending against the building citation.

153.    As a direct result of the City's police of referring so-called "drug houses" to the Building Inspector following a police SWAT raid, Plaintiffs suffered the damages listed above.

154.    As a direct result of the actions of Detective Vaughan, Plaintiff Wanda Millbrook suffered:

    a.      Physical injuries to her person, and

    b.      Medical bills from her follow-up treatment at Barnes Hospital, in a final amount unknown at the time of this filing but to be determined before trial.

**Punitive Damages – Detective Vaughan**

---

[35] Although Missouri law allows admission of evidence of other crimes discovered in the execution of a valid search warrant, *see, e.g., State v. Lachterman*, 812 S.W.2d 759, 765 (Mo. App. E.D., 1991), nevertheless here Defendant Detective Vaughan knew before and during the raid that he had the wrong house and so therefore the search was invalid.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

155.   Detective Vaughan took the following actions with reckless disregard for Plaintiffs' constitutional rights:

   a.   Knowingly or recklessly swearing his affidavit as to an incorrect address for Mr. Ford a/k/a "Mark" or "Roscoe",

   b.   Unreasonably entering Plaintiffs' premises during the raid with the purpose of finding Mr. Ford a/k/a "Mark" or "Roscoe" and their alleged contraband when as soon as he arrived at the premises he knew the he had the wrong house,

   c.   Unreasonably keeping the Millbrook Plaintiffs' persons seized after he knew he was in the wrong,

   d.   Unreasonably searching Plaintiffs' premises after a reasonable opportunity to verify that he was in the wrong house, and

   e.   Unreasonably continuing to use force on the Milbrook Plaintiffs after he knew they were not Darron Ford and he was in the wrong house, by which time no force at all was allowed.

   f.   Continuing the above actions after he knew he was in the wrong house in order to cover up his error.

### Punitive Damages – Inspector Wallace

156.   Inspector Wallace took the following actions with reckless disregard for Plaintiffs' constitutional rights:

   a.   Unreasonably entering Plaintiffs' premises during the raid as Inspector Wallace had no purpose in helping search for Mr. Ford and his alleged contraband, and

   b.   Unreasonably searching Plaintiffs' premises without a building inspector warrant.

### CAUSATION

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

157.    The actions of Detective Vaughan and Inspector Wallace directly and proximately caused Plaintiffs' damages.[36]

158.    The so-called "drug house" building inspection policy of the City of St. Louis directly and proximately caused Plaintiffs' damages related to that inspection and the follow-up events in court.

**ATTORNEY'S FEES AND COSTS - 42 U.S.C. 1988**

159.    Plaintiffs' substantive claims for all Counts are brought under the Civil Rights act, 42 U.S.C. 1983.

160.    In pursuit of these federal civil rights claims, Plaintiffs are incurring reasonable attorney's fees and costs.[37]

161.    Plaintiffs seek their reasonable attorney's fees and costs under 42 U.S.C. 1988 for the pursuit of these claims.

**COUNT I
42 U.S.C. 1983
Unreasonable Search of Premises and Property Damage – Fourth Amendment
All Plaintiffs against Detective Vaughan**

162.    Plaintiffs incorporate by reference all prior paragraphs.

163.    Detective Vaughan swore an affidavit to obtain a warrant to search for Darron Ford and his contraband at Plaintiffs' premises.

164.    Detective Vaughan knew or objectively should have known at the time of applying for the warrant that he had the wrong house number and/or it was unreasonable to search for Mr. Ford , "Mark" or "Roscoe" and their alleged contraband at Plaintiffs' premises.[38]

---

[36] *Malley v. Briggs,* 748 F.2d 715 (1st Cir. 1984), aff'd and remanded, 475 U.S. 335 (1986); *see also Monroe v. Paper,* 365 U.S. 167, 187 (1961) (overruled on other grounds by *Monell v. Dept. of Social Svcs. of the City of New York,* 436 U.S. 658 (1978)).
[37] 42 U.S.C. 1988; *Lefemine v. Wideman,* 133 S. Ct. 9, 10 (2012).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

165. In the alternative, Detective Vaughan knew after arriving outside the Plaintiffs' premises that he had the wrong house and so it was unreasonable to search for Mr. Ford a/k/a "Mark" or "Roscoe" and their alleged contraband at Plaintiffs' premises.

166. In the alternative, Detective Vaughan knew after seizing and hearing the words of the Millbrook Plaintiffs that it was unreasonable to further search for Mr. Ford a/k/a "Mark" or "Roscoe" and their alleged contraband at Plaintiffs' premises.

167. Detective Vaughan knew after seizing and inquiry of the Millbrook Plaintiffs that it was unreasonable to refer the premises to the building inspector for warrantless code inspection of its interior, or to damage the Plaintiffs' property.

168. Detective Vaughan undertook those acts with reckless disregard for Plaintiffs' constitutional rights.

169. As a direct result of Detective Vaughan's acts, Plaintiffs sustained damages.

WHEREFORE Plaintiffs pray this court to award judgment to them against Detective Vaughan for actual and punitive damages, reasonable attorney's fees and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

**COUNT II**
**42 U.S.C. 1983**
**Unreasonable Initial Seizure of Millbrook Plaintiffs – Fourth Amendment**
**Millbrook Plaintiffs against Detective Vaughan**

170. Plaintiffs incorporate by reference all prior paragraphs.

171. At the moment of Detective Vaughan's initial seizure of the Millbrook Plaintiffs' he knew or objectively should have known that it was unreasonable to seize those persons since Detective Vaughan knew or objectively knew at that time he had the wrong house,

---

[38] Power, once granted, does not disappear like a magic gift when it is wrongfully used. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 392 (1971).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

since his purpose was to search for Mr. Ford a/k/a "Mark" and Mr. Ford's alleged

contraband, and the Milbrook Plaintiffs were not Mr. Ford and Mr. Ford lived two lots

down.

172.    At the moment of Detective Vaughan's initial seizure of the Millbrook Plaintiffs' it was

already objectively obvious that none of the Millbrook Plaintiffs were a threat to the

SWAT team which required the seizure of their persons.

173.    Detective Vaughan undertook the seizure of the Milbrook Plaintiffs' with reckless

disregard for the Milbrook Plaintiffs' constitutional rights.

174.    As a direct result of Detective Vaughan's acts, the Millbrook Plaintiffs sustained

damages.

WHEREFORE the Millbrook Plaintiffs pray this court to award judgment to them against

Detective Vaughan for actual and punitive damages, reasonable attorney's fees and costs (42

U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

## COUNT III
### 42 U.S.C. 1983
**Unreasonable Continued Seizure of Millbrook Plaintiffs – Fourth Amendment**
**Millbrook Plaintiffs Against Detective Vaughan**

175.    Plaintiffs incorporate by reference all prior paragraphs.

176.    Once Detective Vaughan had been in the premises a few moments and after he had seized

the Milbrook Plaintiffs, Detective Vaughan knew that it was objectively unreasonable to

continue to seize the Millbrook Plaintiffs since Detective Vaughan knew he had the

wrong house and had the wrong persons.[39]

177.    Detective Vaughan continued the raid in order to cover up his error.

---

[39] *Los Angeles County v. Rettelle*, 550 US 609, 614 (2007), *Michigan v. Summers,* 452 U.S. 692,
705 (1981), *Hutchinson v. Lemmon*, 436 F. App'x 210, 216 (4th Cir. 2011)

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

178.  Detective Vaughan undertook the continued seizure of the Milbrook Plaintiffs with reckless disregard for their constitutional rights.

179.  As a direct result of Detective Vaughn's continued seizure of the Milbrook Plaintiffs, the Millbrook Plaintiffs sustained damages.

WHEREFORE the Millbrook Plaintiffs pray this court to award judgment to them against Detective Vaughan for actual and punitive damages, reasonable attorney's fees and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

**COUNT IV**
**42 U.S.C. 1983**
**Excessive Force on Millbrook Plaintiffs during Entry and Seizure – Fourth Amendment**
**Millbrook Plaintiffs Against Detective Vaughan**

180.  Plaintiffs incorporate by reference all prior paragraphs.

181.  When Detective Vaughan and the SWAT team entered the Plaintiffs' residence via a "no knock" full tactical raid, they used unreasonably excessive force on the Millbrook Plaintiffs.

182.  When Detective Vaughan and the SWAT team forced Plaintiffs to the floor, handcuffed them, threatened them with violence, held them at gun point, and brought a canine into their residence, they used excessive force.

183.  When Detective Vaughan and the SWAT team initially seized the Millbrook Plaintiffs, they used unreasonably excessive force on the Millbrook Plaintiffs.

184.  The excessive force used on the Millbrook Plaintiffs was foreseeable and directly and proximately caused by the "no knock" SWAT manner of entry.[40]

---

[40] *Bravo v. City of Santa Maria,* 665 F.3d 1076 (9th Cir. 2011); *Alexander v. City and County of San Francisco,* 29 F.3d 1355 (9th Cir. 1994).

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

185.    It would have been unreasonably excessive force to enter via a "no knock" full tactical raid even if Detective Vaughan and the SWAT team had had the correct house since the mere alleged presence of all or each of Mr. Ford a/k/a "Mark, "Roscoe", drugs or guns without actual prior violence is insufficient justification for such force.[41]

186.    There were no specific and articulable objective factors as to the dangers or futility of a door knock at the time of the raid, such as:

   a.    Mr. Ford a/k/a "Mark" or "Roscoe" was within the presence and posted a heightened danger to officer safety based on particularized factors,

   b.    Any other dangerous individual was within the presence and posted a heightened danger to officer safety based on particularized factors at the time of entry (for example, by appearing with a weapon and a statement of intent to use that weapon),

   c.    The destruction of the weapons, drugs, currency and records sought on the warrant would be destroyed in the few seconds between knock and entry.

187.    Detective Vaughan and the SWAT team undertook the tactical entry with reckless disregard for Plaintiffs' constitutional rights.

188.    As a direct result of Detective Vaughan's use of excessive force during the initial entry and seizure, the Millbrook Plaintiffs sustained damages.

   WHEREFORE the Millbrook Plaintiffs pray this court to award judgment to them against Detective Vaughan for actual and punitive damages, reasonable attorney's fees and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

**COUNT V**

---

[41] *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1085-86 (9th Cir. 2011); *United States v. Colonna,* 360 F.3d 1169, 1176 (10th Cir.2004)

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

**42 U.S.C. 1983**
**Unreasonable Search of Premises for Building Code Violations – Fourth Amendment**
**All Plaintiffs Against Inspector Wallace**

189.  Plaintiffs incorporate by reference all prior paragraphs.

190.  Inspector Wallace had no role in aiding the police in achieving the particularized objectives of the warrant as to Mr. Ford, "Mark" or "Roscoe" and their alleged contraband.

191.  Inspector Wallace entered and searched the premises.

192.  The purpose of Inspector Wallace's search of the premises was to inspect for interior building code violations.

193.  Inspector Wallace had no warrant to search for interior building code violations.

194.  There were no exigent circumstance or other exceptions to the warrant requirement justifying Inspector Wallace's warrantless search for interior building code violations.

195.  Inspector Wallace undertook his search of the premises with reckless disregard for Plaintiffs' constitutional rights.

196.  As a direct result of Inspector Wallace's acts, Plaintiffs sustained damages.

WHEREFORE Plaintiffs pray this court to award judgment to them against Inspector Wallace for actual and punitive damages, reasonable attorney's fees and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

**COUNT VI**
**42 U.S.C. 1983**
**City of St. Louis *Monell* Liability for Building Inspection Without Warrant**
**All Plaintiffs Against City of St. Louis**

197.  Plaintiffs incorporate by reference all prior paragraphs.

198.  The City of St. Louis has a policy of referring so-called "drug houses" for warrantless building department inspection following a police raid for narcotics and/or weapons.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

199.    The policy violates the Fourth Amendment prohibition on unreasonable searches insofar as it results in a warrantless code inspection by the building inspector, and intrusion into the security of the home without a warrant.

200.    Pursuant to City Policy Detective Vaughan referred Plaintiffs' premises for building code inspection by the City's Building Inspector.

201.    On information and belief, and based on logical inference, pursuant to City Policy Detective Vaughan made the referral ahead of time when he thought his warrant had the correct address.

202.    As a result of the referral Inspector Wallace conducted a warrantless search of Plaintiffs' premises and issued citations for alleged interior deficiencies.

203.    The City of St. Louis policy of referring a Building Inspector in the cases of drug raids was the moving force in Plaintiffs sustaining the damages related to that inspection.

WHEREFORE Plaintiffs pray this court to award judgment to them against the City of St. Louis for actual damages, reasonable attorney's fees and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable.

**COUNT VII**
**42 U.S.C. 1983**
**Preliminary and Permanent Injunctions**
**All Plaintiffs Against City of St. Louis**
**Generalized Policy of Full Tactical Raids without Particularized Reason**

204.    Plaintiffs incorporate by reference all prior paragraphs.

205.    The City of St. Louis has a policy of performing "no knock" full tactical raids on "drug houses" when searching for drugs or weapons pursuant to a warrant.  The policy is not particularized to the circumstances of executing the warrant and does not require more articulable reasons than the mere presence of guns and drugs.

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

206.    Such a generalized policy is unreasonably excessive in force, and unconstitutional under

the Fourth Amendment, unless the City has a particularized fear of undue heightened

danger to officers as a result of prior violence against the police, particularized futility, or

destruction of particularized evidence sought in the warrant that would make a "no

knock" full tactical raid reasonable under the totality of the circumstances.[42]

WHEREFORE Plaintiffs pray this court to enter Preliminary and Permanent Injunctions

against Defendant City of St. Louis to enjoin the City from engaging in dynamic entry into

private homes without reasonable articulable reasons regarding officer safety, particularized

futility, or destruction of evidence, such that a "no knock" full tactical raid would be reasonable

under the totality of the circumstances, and to award Plaintiffs reasonable attorney's fees and

costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable against

Defendant City of St. Louis.

### COUNT VIII
### 42 U.S.C. 1983
### Preliminary and Permanent Injunctions
### Referring Drug Houses for Warrantless Building Inspection

207.    Plaintiffs incorporate by reference all prior paragraphs.

208.    The City of St. Louis has a policy of referring so-called "drug houses" for warrantless

building department inspection following a police raid for narcotics and/or weapons.

209.    The policy violates the Fourth Amendment prohibition on unreasonable searches insofar

as it results in a warrantless code inspection by the building inspector.

WHEREFORE Plaintiffs pray this court to enter Preliminary and Permanent Injunctions

against Defendant City of St. Louis to enjoin the City from allowing referrals or tag alongs of

---

[42] *Bravo v. City of Santa Maria,* 665 F.3d 1076, 1085-86 (9th Cir. 2011); *United States v. Colonna,* 360 F.3d 1169, 1176 (10th Cir.2004)

Electronically Filed - City of St. Louis - July 07, 2015 - 08:59 AM

building inspectors when City of St. Louis police officers are executing warrants, unless there is

a warrant includes such building inspection, and to award Plaintiffs reasonable attorney's fees

and costs (42 U.S.C. 1988), and for such other relief as may be just, meet and reasonable against

Defendant City of St. Louis.

Respectfully submitted,

Co-Counsel for Plaintiffs

　　/s/ W. Bevis Schock　　.
W. Bevis Schock, 32551MO
Attorney at Law
7777 Bonhomme Ave., Ste. 1300
St. Louis, MO  63105
wbschock@schocklaw.com
Fax:    314-721-1698
Voice: 314-726-2322

　　/s/ Hugh A. Eastwood　　.
Hugh A. Eastwood, 62058MO
7911 Forsyth Blvd., Ste. 300
St. Louis, Missouri 63105-3860
heastwood@eastwoodlawstl.com
Fax     (314) 863 5335
Voice  (314) 809 2343