## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

LEON WALKER, JR., et al.,     )
                                 )
       Plaintiffs,        )
                                 )
      vs.             )     Case No. 4:15 CV 1254 CDP
                                 )
ST. LOUIS, MISSOURI,     )
CITY OF, et al.,               )
                                 )
       Defendants.      )

## **MEMORANDUM AND ORDER**

Plaintiffs bring this case under 42 U.S.C. § 1983, alleging that their constitutional rights were violated by a police search of their home pursuant to a search warrant and by a city building inspection conducted after that search. Defendants are detective Ronald Vaughan, who obtained the search warrant; building inspector Hershell Wallace, who conducted the home inspection; and the City of St. Louis, Missouri. Both sides have filed motions for summary judgment.

The undisputed facts show that detective Vaughan is entitled to qualified immunity. Because liability under § 1983 is personal, Vaughan is not responsible for any alleged actions of the SWAT team. The counts against him will be dismissed. Plaintiffs fail to show the City has a policy of using SWAT to execute search warrants with no-knock entries whenever guns may be present. Even if

such a policy existed, plaintiffs cannot prove injury. The City's motion will be granted on this count for injunctive relief. However, neither side will be granted summary judgment on the three counts pertaining to Project 87 building inspections because genuine disputes of fact exist.

## I.    Summary Judgment Standard

In determining whether to grant summary judgment, the court views the facts – and any inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this burden, however, the nonmoving party may not rest on the allegations in its pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita*, 475 U.S. at 587.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." *Wermager v.*

*Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). Instead, each summary judgment motion must be evaluated separately on its own merits to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law. *Husinga v. Federal–Mogul Ignition Co.*, 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007).

## II.   <u>Background</u>[1]

On March 4, 2016, defendant detective Michael Vaughan sought and obtained a state-court search warrant for 5406 Geraldine Avenue in the City of St. Louis, Missouri. His affidavit in support of the warrant attested to his belief that heroin and illegal firearms, along with other evidence of drug trafficking, were being kept there by Darron Ford and others. Vaughan personally appeared before a state-court judge, who issued the warrant to search "Darron Ford … and 5406 Geraldine Avenue" for the contraband.

The narrative portion of the affidavit stated that Vaughan had obtained information from a reliable confidential informant (CI) whom he had used in more than ten previous investigations.[2] Vaughan recited that the CI said he had been inside the building on multiple occasions, including during the past 48 hours, and had observed persons known as "Mark" and "Roscoe" there, along with large

---

[1] Unless indicated specifically otherwise, the facts set out here are undisputed.
[2] The gender and identity of the confidential informant are unknown. For ease of discussion, I will refer to the CI with a male pronoun.

quantities of crack cocaine, heroin, and multiple firearms.  The CI indicated that the occupants had ties to a street gang that had been recently engaged in a shooting in the area.

Vaughan's affidavit stated that a search warrant had been executed not long ago at the next door house, 5412 Geraldine, in which crack cocaine and firearms had been seized from Darron Ford.  The description the CI gave of "Mark" matched that of Darron Ford, and the CI identified a photo of Ford as "Mark."

The affidavit related that Vaughan and his partner, detective Michael Kegel, conducted surveillance at 5406 Geraldine on March 3 and 4, for approximately two hours each day.  Vaughan swore that during each period of surveillance, they observed approximately ten individuals coming and going from the residence, and staying for only brief periods of time.  The affidavit stated that on both occasions the officers observed a subject matching the description of "Roscoe" in the rear yard of 5406 Geraldine.

Police executed the search warrant around 8:15 a.m. on March 5.  A SWAT team knocked and yelled "police" and then very shortly thereafter struck the door several times with a battering ram.  When the door failed to open, they broke a window, which shattered at the same time that the door gave way.  They threw a "flash bang" device into the front room.  Plaintiffs Leon Walker, Wanda Jean

Millbrook, Correll Taylor Millbrook, and Victor Wayne Millbrooks[3] lived at 5406 Geraldine. Leon Walker had already left for work, but Wanda, Correll, and Victor (referred to as "Millbrook plaintiffs") were home when the SWAT team entered. They were handcuffed and brought to the front room. Once SWAT cleared the house, detective Vaughan entered the residence. The search of the plaintiffs' residence by Vaughan and other officers yielded marijuana, drug paraphernalia, and three firearms.[4]

After making the entry at 5406, the SWAT team then went to 5412 Geraldine (the two residences are separated by a vacant lot), and made entry for execution of a separate search warrant there. That warrant had been acquired by Vaughan's partner Kegel, also on the previous day. Kegel had appeared before the same state-court judge to obtain that warrant an hour or two after Vaughan had obtained his warrant. Neither affidavit mentioned that warrants were being sought for both houses at the same time. Vaughan and Kegel testified that they believed that target suspect Darron Ford was using both residences to sell drugs.

Following the searches of both residences, the officers requested building inspections as part of the City of St. Louis' Project 87 Program. Under City Ordinances, Project 87 building inspections have been conducted of nuisance and

---

[3] Unlike other plaintiffs, Victor spells his last name with an "s" on the end.
[4] Plaintiffs' lawyer has characterized these as "old" firearms and has said the marijuana was Leon Walker's personal use marijuana, but no evidence was presented to support these characterizations.

problem properties since the mid-1990s.  It is police department policy that police officers contact dispatch for a Project 87 building inspection after executing a search warrant.  Defendant building inspector Hershell Wallace arrived at 5406 Geraldine Avenue, and asked plaintiff Victor Millbrooks to consent to an inspection of the premises.  Wallace provided Victor with a City Inspection Consent Form, which Victor signed.  Wallace and Victor have slightly different versions of their interaction:  Wallace testified that Victor was not handcuffed and that he told him that if consent was not provided, "we would probably – it would be condemned anyway until an inspection can be obtained."   Victor testified that he was uncuffed just to sign the form and then again placed back on the couch, and that Wallace "demanded" he sign the form, explaining: "Well, what I mean by demanded is basically you sign this or else.  Basically if you don't sign this, I guess the house – forecloses or something was going to happen with the house. We would get put out, something like that."   Before entering the house, the only building code violation that Wallace noticed was the broken front window through which the police had thrown the "flash bang."  Wallace found nothing unsafe about the building, but the Building Department later sent the plaintiffs a letter listing some interior items that needed to be fixed, which Wallace characterized as not serious.

## III.   Police Search and Seizure

Five counts of the amended complaint relate to the police search.  Count I is brought by all four plaintiffs against defendant Vaughan for unreasonable search under the Fourth Amendment. [5]  Counts II through IV are brought by the Millbrook plaintiffs against Vaughan for unreasonable initial seizure, continued seizure, and excessive force.   Count VII is brought against the City of St. Louis and seeks an injunction prohibiting the City from engaging in SWAT team "no knock" full tactical raids on drug houses without particularized concern beyond the presence of guns.

### A. Unreasonable Search and Seizure

Detective Vaughan asserts that he is entitled to qualified immunity on all claims brought against him.  "Qualified immunity protects a government official from liability in a section 1983 action unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known."  *Henderson v. Munn*, 439 F.3d 497, 501 (8th Cir. 2006) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To overcome the defense of qualified immunity, a plaintiff must show: (1) the facts, viewed in the

---

[5] Plaintiffs' challenge to the warrant has changed over time.  Initially they alleged and argued that the police were mistaken about the house numbers, and really intended this search warrant to have been for 5412 Geraldine, where Darron Ford lived, and so Vaughan must have been lying about the address where he said he conducted the surveillance, and about the reliability of the CI. More recently they have argued that the police mislead the judge who issued the warrant by not pointing out to her that they were seeking related search warrants when they appeared in front of her a couple of hours apart.

light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kansas City Police Dep't.*, 570 F.3d 984, 988 (8th Cir. 2009). The court may address either prong first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

It is clearly established that the Fourth Amendment requires a truthful factual showing of probable cause before a warrant can issue. *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (citing *Burk v. Beene*, 948 F.2d 489, 494 (8th Cir. 1991)). Therefore I must consider whether the facts demonstrate a violation of this clearly-established constitutional right.

Plaintiffs assert that Vaughan is not entitled to qualified immunity because he made false statements and omitted material facts in the search warrant application. They allege that Vaughan lied in the affidavit when he said he had surveilled the residence and saw multiple people who came and left after a short period of time. As evidence to support this argument, plaintiffs cite only to their own deposition testimony where they deny ever being involved in drug dealing, and say that they had no knowledge of drugs ever being sold from or stored in their home.

To undermine the validity of the search warrant, plaintiffs must show that detective Vaughan's sworn statements in the affidavit supporting the warrant

"were deliberately false or made with reckless disregard for the truth." *Walker v. Bonenberger*, 438 F.3d 884, 889 (8th Cir. 2006) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).  "Information in an affidavit to establish probable cause must be truthful in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Moody*, 23 F.3d at 1412 (quoting *Franks*, 438 U.S. at 165 (internal quotations omitted)).  For a plaintiff to establish falsity, the plaintiff must do more than provide his "own naked assertions" that he did not commit the crime. *Moody*, 23 F.3d at 1412.  To withstand summary judgment the plaintiff must "substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Id.* (internal quotations omitted).

In a similar case, the Eighth Circuit affirmed qualified immunity where the police had searched the plaintiff's apartment, seized her person, and later discovered that they had entered the wrong apartment unit. *Walker v. Bonenberger*, 438 F.3d 884 (8th Cir. 2006).  In *Bonenberger*, the police had obtained a search warrant based on statements of a reliable confidential informant and their own surveillance.  When police went to execute the warrant, they observed the target suspect conducting drug transactions on the sidewalk in front of the residence.  While arresting him, police asked him where he lived and he said the second floor. *Id*. at 886-87.  The search warrant they had was for the second

floor unit "A;" there were two doors on the second floor landing, and neither was marked as unit "A." Police used a sledgehammer to break down the plaintiff's door, conducted a brief search, and an officer remained with plaintiff for an hour while the other second floor unit was searched. Police later admitted their search of the plaintiff's unit was a mistake. The district court ruled, and the court of appeals affirmed, that the police did not violate plaintiff's rights under the Fourth Amendment. *Id*. at 888. The court found that the plaintiff failed to overcome the presumption of validity regarding the police officer's affidavit in support of the warrant. Plaintiff's "bare assertion" that drug transactions were never conducted from her apartment was insufficient to make a substantial showing of warrant invalidity. *Id*. at 889. The appellate court added that even if the police officer had been mistaken in what he witnessed during surveillance, there was still no showing that he deliberately or recklessly misrepresented his observations when he applied for the warrant. *Id*. at 889-90.

The Eighth Circuit has held that to meet their burden of proving intentional or reckless inclusion of false statements in a warrant affidavit, plaintiffs cannot respond with general attacks upon defendant's credibility, but must present affirmative evidence of bad motive or of a personal stake in the matter. *Morris v. Lanpher*, 563 F.3d 399, 403 (8th Cir. 2009). A court may not infer bad motive "absent even a scintilla of material fact supporting that inference." *Id*. Plaintiffs

must offer specific, nonconclusory evidence that a defendant police officer believed his affidavit was false or recklessly misconstrued facts. *Id.*; *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996).

In our case, plaintiffs testified in their depositions that they were not aware of drugs ever being sold out of their 5406 Geraldine residence; that neither heroin, crack cocaine, nor gang members have ever been present in their residence; and that they do not know anyone named "Mark" or "Roscoe." ECF No. 42 at ¶ 69-90. Similar to the *Bonenberger* case, plaintiffs attempt to demonstrate that detective Vaughan's statements in support of the search warrant were false with only their bare assertions in opposition. This is insufficient to show either that the affidavit was false or that defendant Vaughan believed it was false.

Next, plaintiffs argue that the warrant was invalid because detective Vaughan's belief – that he would find target suspect Darron Ford at their residence – was unreasonable. The warrant detective Kegel acquired on the same day for 5412 Geraldine also listed Darron Ford as an object of that search. Plaintiffs contend that because a person cannot be in two places at once, Vaughan could not have had a reasonable belief that Ford would be found at their residence. I disagree. When reliable information from a CI, confirmed by surveillance by the police, indicates that a target suspect is illegally selling drugs out of multiple

locations, it is not unreasonable to believe that he could be at either of those locations at a given time.

Alternatively, plaintiffs assert that the CI lied to detective Vaughan. "Information may be sufficiently reliable to support a probable cause determination if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence." *Walden v. Carmack*, 156 F.3d 861, 870 (8th Cir. 1998) (citing *U.S. v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)). The affidavit here stated that this CI had proven reliable at least ten times in the past, and that surveillance had corroborated some of the CI's statements. ECF No. 25-1 at 3. Plaintiffs argue that this CI should be considered an unreliable source of information because no heroin or crack cocaine was found in their residence. But the results of the search of plaintiffs' residence do not mean that Vaughan should not have relied on the information provided by his CI. Moreover, weapons and drugs were recovered from plaintiffs' residence in the search. Detective Vaughan's reliance on the CI's statements was objectively reasonable.

Detective Vaughan is entitled to the protection of qualified immunity against the plaintiffs' claims for unreasonable search and seizure in Counts I, II and III.

## B. Excessive Force During Entry and Seizure

The fourth count brought against detective Vaughan is for excessive force. It is undisputed that detective Vaughan did not enter the house with the SWAT team. When he entered the house, the Millbrook plaintiffs were already cuffed and seated on the couch. Plaintiffs argue, however, that Vaughan is liable to them for the SWAT team's alleged use of excessive force because their injuries were a natural consequence of his actions in obtaining the search warrant, completing portions of the SWAT team plan, and briefing the SWAT team before the raid.[6]

Plaintiffs' cite *Jennings v. Davis*, 476 F.2d 1271, 1274 (8th Cir. 1973), for their argument that a "person is liable for the natural consequences of his actions" under 42 U.S.C § 1983. ECF No. 39 at 15; ECF No. 47 at 7. The holding in that case actually supports Vaughan's argument. In *Jennings*, the defendant police officer arrested the plaintiff for a traffic offense and told her to report to the police station. Once at the station, an incident occurred between plaintiff and a civilian clerk that plaintiff alleged caused her physical and emotional injuries. *Jennings*, 476 F.2d at 1273. Given that the only allegation against the defendant officer was that he arrested plaintiff that day, the Eighth Circuit affirmed the trial court's

---

[6] Plaintiffs allege that "Det. Vaughan knew the raid would be no knock when he applied for the warrant." ECF No. 27 at 23. However, there is no evidence in the record to support this allegation. In fact, Vaughan's application for a search warrant for 5406 Geraldine did not request a "no-knock" entry, as detective Kegel's did for 5412 Geraldine. *Compare* ECF No. 25-1 at 2-4 *with* ECF No. 25-8 at 3-5. The defendants presented evidence that the police did knock. Plaintiff Victor Millbrooks testified that he did not hear a knock, but he also testified that he was in his upstairs room with the television on when he heard the SWAT team's forced entry.

dismissal of the complaint against the arresting officer and found the appeal patently frivolous. *Id.* at 1274. Plaintiffs' arguments that Vaughan is responsible for any excessive force that the SWAT team might have used is similarly frivolous. Vaughan is entitled to summary judgment on Count IV.

## C. Request for Injunction against SWAT raids

Plaintiffs assert that the City of St. Louis has a policy of performing "no-knock" full tactical SWAT team raids on drug houses when executing a search warrant where guns might be present in the home. They argue that this policy violates the Fourth Amendment. Even if plaintiffs could establish that such a policy exists, they cannot show that they have been affected by the policy or that they are suffering from irreparable harm from such a policy.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the Eighth Circuit, these four factors are known as the "Dataphase" factors, based upon the 1981 en banc case, *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *West Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir.

1986).  The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*, 555 U.S. at 22.  The factors for granting a permanent injunction are essentially the same as for a preliminary injunction, except that the movant must also attain success on the merits.  *Bank One, Utah v. Guttau*, 190 F.3d 844, 847 (8th Cir. 1999).

According to the Supreme Court, the Fourth Amendment's reasonableness requirement does not require a strict rule of announcement in the execution of all search warrants.  *Wilson v. Arkansas*, 514 U.S. 927, 934 (1995).  Countervailing law enforcement interests, such as a threat of physical violence or the likely destruction of evidence, can justify a no-knock entrance.  *Id*. at 936.  The Court has rejected blanket exceptions to the Fourth Amendment, such as allowing no-knock entries in all felony drug cases.  *Richards v. Wisconsin*, 520 U.S. 385, 388 (1997).  Instead, the reasonableness of the method used to execute a search warrant must be evaluated on a fact-dependent, case-by-case basis.  *U.S. v. Banks*, 540 U.S. 31, 36 (2003).

A warrant may specifically authorize a no-knock entry, but even when it does not, the police may enter without announcing themselves if the circumstances

upon arrival support a reasonable suspicion of exigency. *Id*. at 37. According to the Eighth Circuit, police are not required to request a no-knock entry warrant whenever the basis for the search warrant justifies it. *Doran v. Eckold*, 409 F.3d 958, 965 (8th Cir 2005). If the warrant is silent as to entry, but the facts known prior to obtaining it justify a no-knock entry – and no facts learned by police in execution of the warrant counteract the exigencies – a no-knock entry is reasonable under the Fourth Amendment. *Id*.

Here, plaintiffs cannot prove injury from any alleged City policy. The search warrant obtained by detective Vaughan did not authorize no-knock entry, but based on the allegations of the affidavit, such an entry would have been constitutional. Vaughan attested that the CI witnessed firearms and drugs in plaintiffs' residence and that the residents may be related to a gang that had recently engaged in a shooting. Exigent circumstances, including threat of physical violence to police and the likely destruction of evidence, justified a no-knock entry.

To the extent plaintiffs attempt to make a facial attack on City policy based on the Supreme Court's holding in *City of Los Angeles, California v. Patel*, 135 S. Ct. 2443, 2449 (2015), this attempt fails. In *Patel*, the Court ruled that facial Fourth Amendment challenges to a statute itself, as opposed to a particular application of the statute, are allowed, but are the most difficult to win. *Id*. To

succeed, a plaintiff must establish that the law is unconstitutional in all applications in which it actually authorizes or prohibits conduct, not where it is irrelevant in application.  *Id*. at 2451.  Plaintiffs make no argument as to how the alleged City policy would be unconstitutional in all applications where it authorizes no-knock entry.  Obviously, in many cases where guns are believed to be present – like this case – a no-knock entry is appropriate.

Although the Supreme Court disfavors blanket exceptions to the Fourth Amendment reasonableness inquiry, the facts here do not show that the City even has a policy that guns alone justify no-knock SWAT entries.  Plaintiffs provide no evidence of any specific City policy on SWAT entry.  To the extent that plaintiffs' seek to enjoin the general use of SWAT's "full tactical raid" method of search warrant execution, there is no evidence on the decision-making process for the deployment of SWAT.  Plaintiffs attempt to rely on the deposition testimony of Lieutenant Dodge, a City of St. Louis SWAT Commander, who stated that when weapons are involved, the usual practice is to use the SWAT team for search warrant execution.  ECF No. 25-15 at 18:13-16.  However, plaintiffs mischaracterize Dodge's testimony as an admission of a rigid policy, when he was only speaking in general terms.  *Id*. at 18:1-8.[7]

---

[7] Lt. Dodge confirmed that the custom and practice of SWAT officers is to consider factors outlined in a City of St. Louis Special Order from the Chief of Police in deciding whether to use

Finally, even if plaintiffs could prove a City policy existed, they must have standing to bring a facial attack on the policy. *See Free Speech Coal., Inc. v. Attorney General United States*, 825 F.3d 149, 165 (3d Cir. 2016) (examines whether plaintiffs have standing before reaching the merits of a facial challenge). To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180–181 (2000)). When seeking injunctive relief the standing inquiry focuses on the threat of future harm. *Free Speech Coal.*, 825 F.3d at 166. Plaintiffs have asserted no likelihood of future harm from any alleged City policy. The City is entitled to summary judgment on Count VII.

## IV.  Project 87 Building Inspection of 5406 Geraldine

Plaintiffs bring three claims arising from the Project 87 building inspection that was conducted after the search of their residence. Count V alleges building inspector Hershell Wallace conducted an unreasonable search in violation of the Fourth Amendment because Victor Millbrooks's consent to search was not

---

SWAT for the execution of a search warrant. ECF No. 25-15 at 14:18–17:10, 16:12–17:2. The Special Order was not submitted as evidence in this case.

voluntarily given. Count VI seeks to impose liability on the City of St. Louis

under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978),

because Wallace's unlawful search was conducted pursuant to a city policy. Count

VIII seeks to enjoin the City from allowing referrals to building inspectors when

City police officers are executing warrants, unless the warrant authorizes such

building inspections.

**A. Defendant Building Inspector Hershell Wallace**

Wallace seeks summary judgment of the claim brought against him based on

the fact that he obtained a signed consent form to inspect and that he is protected

by qualified immunity. As discussed earlier, in deciding whether a defendant is

protected by qualified immunity, I must determine whether plaintiffs have asserted

a violation of a clearly-established right and whether a reasonable official in the

defendant's position would have known that his conduct violated that right.

*Walden*, 156 F.3d at 868-69. Wallace is protected by qualified immunity where his

actions are found to have "objective legal reasonableness" when "assessed in light

of the laws or legal rules that were clearly established at the time the action

occurred." *Id*. at 869 (quoting *Anderson v. Creighton*, 483 U.S. 635, 639-40

(1987)).

It is well established that the Fourth Amendment's prohibition on

warrantless entry into a residence does not apply when voluntary consent has been

given. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). In determining whether consent to search was voluntary, the court must examine the totality of the circumstances in which it was given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The Eighth Circuit has set out factors for the characteristics of the person and the environment, to be considered when determining whether consent to search was voluntarily given. *U.S. v. Chaidez*, 906 F.2d 377 (8th Cir. 1990). Characteristics of persons giving consent which may be relevant to the question include: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent; and (5) whether they were aware of the protections afforded to suspected criminals by the legal system. *Id*. at 381. Characteristics of the environment in which consent was given include: whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred. *Id*. No single factor is dispositive or controlling. *U.S. v. Bradley*, 234 F.3d 363, 366 (8th Cir. 2000).

The evidence presented on the summary judgment motions shows that disputes of fact remain regarding whether Victor voluntarily consented to the inspection. Viewing the facts most favorably to the plaintiffs, police entered Victor's home with a battering ram and flash-bang, dragged him and his family members across the floor, and handcuffed them while they searched their house. Less than an hour later, Wallace was accompanied by police when he approached handcuffed Victor and asked him to sign the consent form. When Victor questioned the need for the inspection, Wallace informed him that if he did not sign the consent, he and his family would be put out of their home. This evidence, if believed by a jury, could show that the consent was not voluntary.

The City relies on a 2007 ruling from this district which found a City of St. Louis Project 87 building inspector protected by qualified immunity, but that case is distinguishable. In *Appel v. City of St. Louis*, No. 4:05-CV-772-SNL, ECF No. 168 (E.D. Mo. Aug. 15, 2007) (*aff'd in part, rev'd in part on other grounds sub nom.*, *Cross v. Mokwa*, 547 F.3d 890 (8th Cir 2008)), a police officer triggered the Project 87 inspection by filing a Nuisance Form and citing "major structural deficiencies and overcrowding." *Appel*, ECF No. 168 at 6 n.4. The court held that police presence and the building inspector's threat to condemn the property did not render the resident's consent to the inspection involuntary and found that qualified immunity protected the Project 87 building inspector. *Id*. at 26 n.10, 27.

Unlike this case, in *Appel* there was particularized knowledge of a building code violation within the premises, and therefore, there was probable cause for the search. The plaintiffs in *Appel* did not contest the ruling as to qualified immunity of the building inspector on appeal, but in discussion of related issues, the court of appeals expressed some skepticism about the legitimacy of Project 87 inspections. *Cross v. Mokwa*, 547 F.3d at 899 (noting genuine fact disputes regarding the validity of the Project 87 form and whether the reasons for issuing the Project 87 citation were legitimate). In our case, the Project 87 inspection was triggered by the police department policy of requesting an inspection following the execution of any search warrant. ECF No. 25-13 at 114:13-115:2. Other than the window that was broken by the SWAT team upon entry, Wallace had no reason to believe he would find building code violations before conducting the search.

There are genuine disputes of fact as to whether Victor's consent to inspect was voluntarily given. Under the objective standard for qualified immunity, factual disputes remain as to whether it is reasonable for a building inspector to threaten condemnation of a home when there is no evidence to suggest building code violations are present. Neither side will be granted summary judgment on Count V.

**B. Defendant City of St. Louis, Missouri**

In Counts VI and VIII, plaintiffs bring a claim under *Monell* and seek injunctive relief against the City in regards to Project 87 building inspections. In *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), the Supreme Court held that a municipality or local government may be sued directly under § 1983 when that local government implements an unconstitutional policy or custom. Factual disputes as well as legal issues remain regarding exactly what the city policy is and whether a policy that allows a search whenever a homeowner refuses consent for an inspection is constitutional. Municipal liability may only be sustained where there has been a violation of the plaintiffs' constitutional rights as a result of action by the municipality's employee. *Speer v. City of Wynne, Ark.*, 276 F.3d 980, 986 (8th Cir. 2002). Because disputes of fact exist as to whether Wallace violated plaintiffs' Fourth Amendment rights with the Project 87 building inspection, plaintiffs' claims for *Monell* liability and injunctive relief pertaining to Project 87 inspections withstand summary judgment. Neither side will be granted summary judgment on these two counts.

**V.  <u>Conclusion</u>**

Summary judgment will be granted to defendants on Counts I, II, III, IV, and VII of the amended complaint. Detective Vaughan is protected by qualified immunity and is not personally liable for any excessive use of force by the SWAT

– 23 –

team.  Additionally, plaintiffs have not shown that the City has a policy of using SWAT to perform no-knock search warrant entries based on the presence of guns alone, nor have they shown that plaintiffs suffered harm or a likelihood of future harm as a result of such alleged policy.

Summary judgment will not be granted to either side as to Counts V, VI, and VIII, pertaining to the Project 87 building inspection by defendant Wallace.  Facts are in dispute as to whether Victor voluntarily consented to the inspection and whether the City Ordinances authorizing Wallace to threaten condemnation are constitutional.

Finally, defendants have a pending Motion for Protective Order in regards to City of St. Louis spreadsheets documenting the number of search warrants executed by SWAT during a certain time period (ECF No. 25-10).  Because all counts relating to search warrant execution have been dismissed from this case, this motion is now moot.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for partial summary judgment [ECF No. 24] is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment [ECF No. 28] is **GRANTED** in part.  Counts I, II, III, IV, and VII are dismissed.

**IT IS FINALLY ORDERED** that defendants' motion for protective order

[ECF No. 37] is **DENIED** as moot.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 29th day of December, 2016.